2016 ND 87

**Alane A. SCHMUCK, Plaintiff and Appellant**

v.

**Richard D. SCHMUCK, Defendant and Appellee.**

No. 20150210.

Supreme Court of North Dakota.

May 26, 2016.

Darcie M. Seboe Einarson, Grafton, ND, for plaintiff and appellant.

Joshua Nyberg, Fargo, ND, for defendant and appellee.

McEVERS, Justice.

[¶ 1] Alane Schmuck, now known as Alane Dosmann, appeals from a district court's divorce judgment denying her an award of spousal support and declining to retain jurisdiction over spousal support. We affirm.

I

[¶ 2] Richard Schmuck and Alane Dosmann were married in August 1987 and have three children together. At the time of the divorce, both parties were forty-eight years old. Schmuck graduated from high school and joined the military where he received extensive vocational training. During the marriage, the parties agreed that Dosmann's employment was chosen to accommodate Schmuck's employment, and to allow her to dedicate her time outside of work to the children and the family home. Dosmann has a high school degree and has primarily worked part time in various positions as a cashier, as a daycare worker, in a nursing home, and, for the last eleven years, as a paraprofessional in the Grafton school district.

[¶ 3] Dosmann filed for divorce in August 2014. The parties filed a joint stipulation, resolving many of the issues for trial. The parties litigated a number of issues, including the division of property and debts and whether an award of spousal support was appropriate. After a bench trial, the district court adopted the parties' stipulation, with the exception of the stipulated amount of Schmuck's gross income. The district court identified and valued the remaining marital property and debts. In dividing the marital estate and in deciding spousal support under the *Ruff–Fischer* guidelines, the district court made extensive findings of fact.

[¶ 4] After weighing the factors, the district court awarded fifty-five percent of the marital estate to Dosmann and denied her an award of spousal support. The district court did not retain jurisdiction over spousal support. Dosmann appeals from the district court's divorce judgment denying her requests for spousal support and to retain jurisdiction over spousal support.

II

[¶ 5] Dosmann argues the district court's determination to not award her spousal support was clearly erroneous.

[¶ 6] "A court may award spousal support under N.D.C.C. § 14–05–24.1." *Harvey v. Harvey*, 2014 ND 208, ¶ 15, 855 N.W.2d 657. A district court must consider the *Ruff–Fischer* guidelines in determining whether spousal support is appropriate, including:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.; see Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952). "The court must also consider the needs of the spouse seeking support and the ability of the other spouse to pay." *Woodward v. Woodward*, 2013 ND 58, ¶ 4, 830 N.W.2d 82. "The court is not required to make specific findings on each factor if we can determine the reasons for the court's decision." *Norberg v. Norberg*, 2014 ND 90, ¶ 31, 845 N.W.2d 348. "Property distribution and spousal support are interrelated and often must be considered together." *Id.* Both economic and noneconomic fault are proper factors for the district court to consider. *Reineke v. Reineke*, 2003 ND 167, ¶ 8, 670 N.W.2d 841. "An award of spousal support is a finding of fact which will not be set aside on appeal unless clearly erroneous." *Pearson v. Pearson*, 2009 ND 154, ¶ 5, 771 N.W.2d 288 (quotation marks omitted). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Krueger v. Krueger*, 2008 ND 90, ¶ 7, 748 N.W.2d 671.

·A

[¶ 7] Dosmann argues the district court erred in establishing Schmuck's present income for the purposes of awarding spousal support. Dosmann has not appealed the district court's identical income finding for the purposes of determining child support. Dosmann argues the district court failed to consider income received in 2014 from a former employer and made a conservative estimate on overtime that Schmuck may work. Dosmann argues that, based on Schmuck's previous work history, Schmuck has the ability to earn more than the district court found as his present income.

[¶ 8] A party's earning ability is not necessarily the same as a party's net income for the purposes of determining child support under the guidelines. *Conzemius v. Conzemius*, 2014 ND 5, ¶ 45, 841 N.W.2d 716 (relying on *Becker v. Becker*, 2011 ND 107, ¶ 15, 799 N.W.2d 53 (discussing earning ability for purposes of spousal support versus child support)).

[¶ 9] The evidence presented to the district court shows Schmuck's income fluctuated widely from 2009 to 2013. The parties had stipulated that the court should evaluate Schmuck's income for the purposes of calculating child support as if he had only worked at his current employer earning $52,000 annually. In·rejecting the parties' stipulation, the district court used the invited method to determine Schmuck's annual gross income based on his earnings at his current employer, extrapolating from time actually worked for that employer, and refusing to include overtime in the calculation as too speculative.

[¶ 10] The district court also included Schmuck's share of military retirement benefit and his Veterans Administration disability benefit in determining his income. The parties provided the district court with exhibits showing income that contradicted the stipulated amounts, and each parties' proposal of how to divide Schmuck's military retirement and V.A. disability benefits were, at best, incomplete and, at worst, lacked candor with the court. Given the evidence presented and the arguments made to the district court, the district court's finding of fact that Schmuck's annual gross income was $79,535 was not clearly erroneous.

## B

[¶ 11] Dosmann argues the district court erred calculating her income, alleging the evidence in the record does not support her estimated income for the summer months of $6,000. Dosmann argues the W–2 income the district court relied upon to determine her income for the nine-month paraprofessional position included income for working for three weeks for summer school. Dosmann also argues the finding of an estimated $4,097 for her part-time work was substantially more than what she would actually earn.

[¶ 12] The district court found Dosmann's future annual gross income to be $35,643 based on her nine-month position as a paraprofessional at Grafton Public Schools, where she was expected to earn more than $18,214; income from Schmuck's retirement; income from a part-time cleaning job of $4,097; and, estimating she could earn $6,000 during the summer months. Dosmann's W–2 gross income from the school in 2014 was $17,139, including the time she worked during the summer. The district court specifically rejected Dosmann's argument that her earning ability should be based on

past income reflected in her W–2 statements.

[¶ 13] The district court found Dosmann was estimated to earn $4,097 at her part-time cleaning job. Dosmann testified that she earned $9.50 per hour and worked three days a week at 1–1.5 hours per shift at her cleaning job. However, she also testified that she worked roughly ten hours per week. Schmuck argued that Dosmann's pay stubs reflected that she worked an average of 17.25 hours every two weeks. The district court's finding is within the range of the evidence (8.625 hours per week × 50 weeks × $9.50 per hour = $4,097). See Lynnes v. Lynnes, 2008 ND 71, ¶ 16, 747 N.W.2d 93 ("When the district court's valuation is within the range of evidence provided by the parties, the district court's valuation will not be set aside, unless this Court has a definite and firm conviction a mistake has been made."). The district court's finding on Dosmann's earning from her part-time cleaning job is not clearly erroneous.

[¶ 14] The district court made two separate and inconsistent findings on Dosmann's earning ability for the nine-month paraprofessional position: one indicating her income would be $18,214 and another at a slightly higher amount of $18,348. Although the district court did not specifically state how it came to those amounts, it relied on Schmuck's calculations which included Dosmann's increased wage of $13.18 per hour and the 1,382 hours she worked in 2014 ($13.18 × 1,382 = $18,214.76). The district court attempted to estimate Dosmann's summer income based on what she earned during the nine-month school period. It is not error to estimate what Dosmann may earn during the summer. See Mellum v. Mellum, 2000 ND 47, ¶ 13, 607 N.W.2d 580 (holding the district court did not err in using wife's wages as a paraprofessional for the school

term and imputing minimum wage for the summer months). The district court found Dosmann could earn $6,000 based on the nine-month position. However, in doing so, it appears the district court included the hours she worked in summer school with her earnings from the nine-month school period. By starting with an inflated number of hours, it appears the district court may have overestimated Dosmann's earning ability for both periods totaling approximately $1,100 per year. However, Dosmann also testified that she usually receives a raise at the beginning of the school year, the last raise being $1.00 per hour. If the district court took into consideration the probability of Dosmann receiving even a modest raise, the finding on her earning ability would still have been within the range of the evidence. *See Lynnes*, 2008 ND 71, ¶ 16, 747 N.W.2d 93. Even if the district court did not consider her potential raise, this modest miscalculation standing alone does not make the district court's finding on spousal support clearly erroneous.

### C

■ [¶ 15] Dosmann argues the district court erred in its findings on the circumstances and necessities of the parties. Dosmann argues the district court erred in determining the amount child support she will receive over time, because child support will decrease after one year, rather than the three years estimated by the court.

[¶ 16] The district court found the monies Dosmann will receive through wage income and payments from Schmuck will adequately address her current needs. The district court found Dosmann's monthly living expenses will be about $4,300 "in the foreseeable future." Based on this finding, Dosmann's annual expenses would be approximately $51,600 per year. The finding on Dosmann's expenses also included expenses associated with the children. In determining Dosmann's income, the district court included child support as part of its calculation, finding:

> [Dosmann] will also have income from child support coming into the household of an additional sum of $19,248.00 for approximately *three years*, and a sum of $12,216.00 for two years thereafter. Consequently, her total income resources for the next three years will be approximately $54,891.00; approximately $47,859.00 for two years thereafter; and then without considering any other resource thereafter the sum of $35,643.00.

(Emphasis added.) The record reflects that K.S. will graduate in May of 2016, and turn eighteen years of age in June of 2016. Schmuck's child support obligation for K.S. ends approximately one year after the judgment was entered, not three years as found by the district court. Schmuck's child support obligation of $1,614 a month will be reduced to $1,018 a month and will terminate after approximately five years. The evidence in the record establishes that, when the amount of child support Dosmann receives is reduced, Dosmann's expenses will likely exceed her income. We agree with Dosmann that the district court erred in determining the length of time she will receive child support for K.S. This tends to show that Dosmann will have need for spousal support sooner than anticipated by the district court. Again, need is only part of the analysis and does not persuade us that failure to award spousal support was clearly erroneous.

### D

■ [¶ 17] Dosmann argues the district court's denial of spousal support was likely based on her ability to meet her needs while receiving child support com-

bined with Schmuck's inability to pay due to his child support obligations. We agree.

[¶ 18] When considering Schmuck's ability to pay, the district court found Schmuck's gross income to be $79,535 and his monthly expenses "may be up to" $8,042. At first blush, Schmuck's expenses appear to be extraordinarily high, but the expenses included debt repayment, tax liability, the separate property division payment, and child support. Schmuck was also ordered to maintain and insure the vehicles that the minor children drove. The district court found Schmuck's "anticipated expenses drastically exceed his projected income and earning ability by almost $16,500.00 annually." Based on anticipated expenses of $8,042 per month, the district court's finding was correct. However, the district court allowed the deferment of the property division payment of $396 per month until such time as the child support for K.S. terminates, leaving Schmuck's monthly expenses at $7,646, as was recognized by the district court. Even at the lower monthly income, Schmuck's expenses would exceed his income by more than $11,000 per year. Further, taking into consideration the reduction of child support obligation of $596 per month when K.S. graduates, Schmuck's projected reduced expenses would be $7,050 per month, or $84,600 per year, which still exceeds his gross income. The district court's finding that Schmuck did not have an ability to pay spousal support is not clearly erroneous.

### E

[¶ 19] Dosmann also argues the district court erred in its findings on several other *Ruff–Fischer* guidelines, including conduct of the parties during the marriage, stations in life, and the health and physical condition of the parties. We need not address each of these arguments individually.

[¶ 20] The district court found Schmuck had substantially greater income than Dosmann. The district court also found that both parties have incomes that make it difficult for them both to meet their anticipated monthly expenses. Schmuck has a disability rating of seventy percent, while Dosmann is in relatively good health. Dosmann was awarded fifty-five percent of the marital estate and Schmuck was assigned a substantial amount of the credit card debt and past years' tax obligations due to his financial mismanagement. All of these findings are supported by the record and would indicate that the district court was appropriately considering the *Ruff–Fischer* guidelines when considering both the division of property and the spousal support determination.

[¶ 21] The district court considered the *Ruff–Fischer* guidelines, many of which would have supported an award of spousal support. However, the overarching finding was that Schmuck, after being made responsible for the marital debts, payment for the property division, the tax liability, and his child support obligation, did not have the ability to pay spousal support. The district court recognized the realities of the situation—that you cannot squeeze blood from a turnip. After reviewing Dosmann's arguments and the evidence in the record, we are not left with a definite and firm conviction that a mistake has been made. We conclude the district court's findings on spousal support are not clearly erroneous.

### III

[¶ 22] Dosmann also argues the district court erred in failing to retain jurisdiction to award spousal support in the future.

[¶ 23] Dosmann relies on *Branson v. Branson*, a case in which this Court reversed the district court on the issue of failing to reserve spousal support. 411 N.W.2d 395, 398–99 (N.D.1987). In *Branson*, the wife demonstrated that she was in need of rehabilitative spousal support to pursue a nursing degree and was disadvantaged by the divorce because she had only a high school education, had not been employed outside the home during the marriage, had a much lower earning ability than her husband, and she received no income-producing property from the marriage. *Id.* at 398. Despite having a better education and a greater earning ability, the husband in *Branson* did not have sufficient income to pay rehabilitative spousal support. *Id.* This Court stated in *Branson*:

> In view of Pamela's demonstrated need for rehabilitative spousal support and the possibility that David may be able to afford such support in the future, we believe that the trial court should have expressly retained jurisdiction to later award such support if circumstances changed. We are left with a definite and firm conviction that a mistake has been made in not awarding spousal support to Pamela without retaining jurisdiction to later award spousal support if Pamela's needs remain and David is later able to afford to pay rehabilitative support.

*Id.* at 398–99.

[¶ 24] Dosmann's reliance on *Branson* is misguided for several reasons. Unlike the wife seeking spousal support in *Branson*, Dosmann has been employed outside the home throughout the marriage, has the same level of education as Schmuck, and has no interest in obtaining further education to rehabilitate herself. In addition, *Branson* appears to have been decided on the basis of the "disadvantaged spouse doctrine," which this Court has disposed of, to reemphasize the importance of comprehensive analysis under the *Ruff–Fischer* guidelines. *See Mertz v. Mertz*, 2015 ND 13, ¶ 9, 858 N.W.2d 292 (citations omitted).

[¶ 25] Dosmann was seeking permanent spousal support, not rehabilitative support. Permanent spousal support may be an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living. *See Mertz*, at ¶ 9. A district court may award permanent spousal support when a spouse cannot be equitably rehabilitated to make up for the opportunities and development lost during the course of the marriage. *Id.; see also Wagner v. Wagner*, 2007 ND 33, ¶ 8, 728 N.W.2d 318 (stating "[p]ermanent spousal support is appropriate 'when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage' ") (citation omitted).

[¶ 26] The district court did not provide a specific rationale for not retaining jurisdiction of spousal support. However, we are able to understand the rationale underlying its decision. *See Schiff v. Schiff*, 2013 ND 142, ¶ 7, 835 N.W.2d 810 ("Although the district court must adequately explain the basis for its decision, we will not reverse a district court's decision when valid reasons are fairly discernable, either by deduction or by inference.") (quotation marks omitted). In its denial of spousal support, the district court incorporated its findings made in regard to the division of property, and in addition, made a number of findings specific to spousal support, including:

> B. There is no evidence that indicates [Dosmann] sacrificed a career both that would have lead to greater future income for [Dosmann] in order to en-

hance [Schmuck]'s own career. To the contrary, prior to and during the marriage, [Dosmann]'s work history indicates employment not directed to any career path.

C. It is recognized that [Dosmann]'s employment track was subject to following [Schmuck]'s career and employment track. However, [Dosmann] never testified she chose these employments as a career sacrifice to meet family goals or work goals for [Schmuck].

. . .

E. [Dosmann] expresses no desire to pursue a new career path, especially any path requiring further education.

F. This long term marriage did by mutual agreement place [Dosmann] in a situation where her employment was secondary to family demands. That is opposite of [Schmuck]'s priorities. But by their conduct, they agreed to this.

G. [Schmuck] has substantially greater income. However, assignments of the credit card debt, the income tax debts for years 2011–2013, and the child support obligation substantially reduces [Schmuck]'s ability to provide spousal support. In fact, [Schmuck]'s anticipated expenses drastically exceed his projected income and earning ability by almost $16,500.00 annually. . . .

H. None of the assets awarded to [Schmuck] are income-producing. . . .

I. The monies [Dosmann] with receive through wage income and payments from [Schmuck] will adequately address [Dosmann]'s current needs, even without the property payments she will receive monthly. On the other hand, [Schmuck]'s expenses, especially until his child support obligation ends, will significantly consume income he has.

J. [Schmuck]'s past injuries and disabilities will in all likelihood preclude him from ever generating the kind of higher income he had before beginning work with ACSC or working beyond normal retirement.

K. [Dosmann]'s significantly lesser income relative to [Schmuck]'s, and the commitment she made to managing the family home and parenting support an award of spousal support. But, the other factors considered in their totality otherwise weigh against that.

[¶ 27] The district court recognized Dosmann earned significantly less than Schmuck, and it was only with the inclusion of child support as income, that Dosmann would be able to meet her anticipated expenses. As previously noted, when the district court considered the *Ruff–Fischer* guidelines, many of the individual findings would have supported an award of spousal support. However, Schmuck, after being made responsible for the marital debts, payment for the property division, and his child support obligation, did not have the ability to pay spousal support for at least several years, until his child support ended.

[¶ 28] The district court's findings regarding Dosmann's career and work history are instructive as to why it did not retain jurisdiction for future consideration of spousal support. The district court found there was no evidence that Dosmann sacrificed a career that would have lead to greater future income for herself in order to enhance Schmuck's career. The district court made a finding on the parties' education that there was no evidence offered that would allow for a finding that either party's further education was interrupted or terminated to accommodate the other's career track.

[¶ 29] In effect, the district court's finding supports its conclusion there was no need to award permanent spousal support to make up for the opportunities and

development lost during the course of the marriage, whether it be a current award or a future award. Dosmann has cited no authority, nor have we found any, that requires the district court to retain jurisdiction under the circumstances presented. While we may have come to a different conclusion than the district court, we are not left with a definite and firm conviction that a mistake has been made.

## IV

[¶ 30] Dosmann requests an award of costs and attorney's fees on appeal. "This Court has held, in a divorce action, attorney fees for an appeal may be awarded if one spouse has a need for them and the other spouse has an ability to pay." *Solem v. Solem*, 2008 ND 211, ¶ 19, 757 N.W.2d 748 (citing *Wold v. Wold*, 2008 ND 14, ¶ 20, 744 N.W.2d 541). "Although the trial court and this Court have concurrent jurisdiction to award attorney fees for an appeal in divorce proceedings, we prefer the trial court to consider whether attorney fees are appropriate." *Ebach v. Ebach*, 2005 ND 123, ¶ 21, 700 N.W.2d 684

(citing *Dvorak v. Dvorak*, 2005 ND 66, ¶ 33, 693 N.W.2d 646). In the divorce judgment, each party was ordered to pay their own attorney's fees. Based on our review of this record, our affirmance of the district court's spousal support decision, and the district court's previous order requiring each party to pay their own attorney's fees, we deny Dosmann's request for attorney's fees on appeal. *See Solem*, 2008 ND 211, ¶ 19, 757 N.W.2d 748.

## V

[¶ 31] We affirm the district court's judgment.

[¶ 32] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.