McEvers, Justice.
 

 [¶ 1] Tamra Knudson appeals from a judgment granting her a divorce from Mark Knudson, denying her request for spousal support, and ordering her to pay child support. We conclude the district
 
 *796
 
 court's decision denying Tamra Knudson's request for rehabilitative spousal support is not clearly erroneous and the court did not misapply the law in calculating her child support obligation. We affirm.
 

 I
 

 [¶ 2] Tamra and Mark Knudson were married in October 1998. Tamra Knudson had a child from a prior relationship, and Mark Knudson later adopted the child. The parties had three more children together during the marriage. In 2016, Tamra Knudson filed for divorce. Three of the parties' children were minors at the time of the divorce, and the oldest of the three minor children was seventeen years old and a senior in high school.
 

 [¶ 3] Tamra Knudson requested the district court award her primary residential responsibility of the parties' three minor children, child support according to the child support guidelines, and rehabilitative spousal support for six years. Mark Knudson argued spousal support was unnecessary and the parties had a prenuptial agreement that applied to the division of their property. He also requested that he be awarded primary residential responsibility of the parties' minor children and child support.
 

 [¶ 4] Before trial, the parties reached an agreement on the division of their property and debts. Neither party challenged the validity of the premarital agreement. The parties also reached an agreement on a parenting plan for the two youngest minor children. The parties' agreement resolved all parenting issues for the two children, other than child support. The parties agreed they would have joint residential responsibility for the two youngest children with parenting time alternating weeks. The district court adopted the parties' stipulations after the trial.
 

 [¶ 5] On April 25, 2017, a divorce trial was held on the remaining issues. The parties advised the district court that the only issues left to be determined were Tamra Knudson's request for spousal support, residential responsibility for the oldest minor child, and child support.
 

 [¶ 6] On June 13, 2017, the district court ordered that Mark Knudson be awarded primary residential responsibility of the parties' oldest minor child. Tamra Knudson was awarded parenting time every other Wednesday evening and every other weekend, with extra time during the summer. The court also entered an order denying Tamra Knudson's request for spousal support.
 

 [¶ 7] The parties filed proposed child support calculations and supporting briefs. On July 25, 2017, the district court ordered Tamra Knudson pay $403 per month in child support for the three minor children after the court calculated each party's child support obligation based on their net monthly income and offset the support obligations. The court also ordered Tamra Knudson's child support obligation would decrease to $57 per month after her support obligation for the oldest minor child ended.
 

 [¶ 8] On October 12, 2017, the district court entered findings of fact, conclusions of law, and order for judgment. The court made detailed findings and restated its prior decisions, including its decisions on residential responsibility for the children, child support, and spousal support. Judgment was subsequently entered.
 

 II
 

 [¶ 9] Tamra Knudson argues the district court erred by denying her request for rehabilitative spousal support. She claims there was evidence establishing that she is a disadvantaged spouse with a need for rehabilitative spousal support and that
 
 *797
 
 Mark Knudson has the ability to pay. She contends the court's findings are not supported by the evidence and the court relied on inappropriate factors.
 

 [¶ 10] A spousal support decision is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous.
 
 See
 

 Schmuck v. Schmuck
 
 ,
 
 2016 ND 87
 
 , ¶ 6,
 
 882 N.W.2d 918
 
 . "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made."
 

 Id.
 

 (quoting
 
 Krueger v. Krueger
 
 ,
 
 2008 ND 90
 
 , ¶ 7,
 
 748 N.W.2d 671
 
 ).
 

 [¶ 11] Under N.D.C.C. § 14-05-24.1, the district court may order spousal support after taking the parties' circumstances into consideration. The court must consider the needs of the spouse seeking support and the ability of the other spouse to pay.
 
 Allmon v. Allmon
 
 ,
 
 2017 ND 122
 
 , ¶ 15,
 
 894 N.W.2d 869
 
 . The court must also consider the
 
 Ruff
 

 -
 

 Fischer
 
 guidelines, including the following factors:
 

 [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.
 

 Schmuck
 
 ,
 
 2016 ND 87
 
 , ¶ 6,
 
 882 N.W.2d 918
 
 (quoting
 
 Harvey v. Harvey
 
 ,
 
 2014 ND 208
 
 , ¶ 15,
 
 855 N.W.2d 657
 
 );
 
 see
 

 Fischer v. Fischer
 
 ,
 
 139 N.W.2d 845
 
 , 852 (N.D. 1966) ;
 
 Ruff v. Ruff
 
 ,
 
 78 N.D. 775
 
 , 784,
 
 52 N.W.2d 107
 
 , 111 (1952). The court is not required to make specific findings on each
 
 Ruff
 

 -
 

 Fischer
 
 factor, but we must be able to determine the reasons for the court's decision.
 
 Berg v. Berg
 
 ,
 
 2018 ND 79
 
 , ¶ 9,
 
 908 N.W.2d 705
 
 . Economic and non-economic fault are appropriate factors for the court to consider.
 
 Schmuck
 
 , at ¶ 6.
 

 [¶ 12] Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status.
 
 Berg
 
 ,
 
 2018 ND 79
 
 , ¶ 9,
 
 908 N.W.2d 705
 
 . Rehabilitative support provides a disadvantaged spouse with an opportunity to acquire an education, training, work skills, or experience to become self-supporting.
 

 Id.
 

 Property division and spousal support are interrelated and often must be considered together.
 

 Id.
 

 [¶ 13] On June 13, 2017, the district court denied Tamra Knudson's request for spousal support. The court explained:
 

 [B]ased upon [Tamra Knudson's] marital conduct, her ability to earn income and the sufficiency of her assets, including income producing assets, received in the property settlement to meet her financial needs, as well as [Mark Knudson's] inability to pay spousal support with his income, [Tamra Knudson's] request for spousal support is hereby DENIED.
 

 [¶ 14] The district court further explained its decision in its October 11, 2017, findings of fact, conclusions of law, and order for judgment. The court made detailed findings about the
 
 Ruff
 

 -
 

 Fischer
 
 factors. The court found the parties had been married since 1998, they resided in a modest farmhouse on the Knudson family farmstead, and they maintained a modest lifestyle during the marriage. The court found Mark Knudson was forty-seven years old, he had a bachelor's degree, he was in good health but experienced some health issues in connection with the end of the marriage, and he has worked as a
 
 *798
 
 farmer since he was a teenager. The court found Tamra Knudson was forty-five years old, she was a high school graduate, she did not have any physical or mental conditions which would impair her ability to work, she had worked at various service jobs before the marriage, and she worked on the farm during the marriage. The court found Tamra Knudson had experience in a variety of farming services from working on the farm, she was attending college to become a licensed massage therapist, and she was not required to pay tuition due to her involvement in a tuition waiver program. The court considered each party's financial situation and found:
 

 Tamra receives substantial liquid assets and income-producing assets through the parties' division of property and debts. Tamra receives three bank accounts containing balances over $170,000.00. She also receives Mark's Stifel investment account with a value of more than $64,000. As such, she receives approximately $234,000 in cash and liquid assets. Additionally, Tamra receives both parties' IRA and Roth IRA accounts which are worth a total of $71,765. In the parties' property division, Tamra receives four quarters of land valued at $437,667, a life estate in five quarters of Mark's land included in the
 
 Prenuptial Agreement
 
 in which the parties' children receive the remainder interest, mineral interests valued at $495,433, cattle valued at $16,200, her 2015 Chevy Suburban valued at $35,000, the parties' timeshare in Las Vegas, and other assets. Through the property and debt division, Tamra receives assets valued at over $1,233,000, exclusive of her household property items, the value of the Las Vegas timeshare, and the value of her life estate interest in the five quarter sections of farmland. Tamra does not receive any marital debt in the agreement and did not have any debt at the time of the trial.
 

 Tamra's income was $316,317 in 2016. Mark's income was $90,981 in 2016.... Tamra's income averages $123,057 from 2012 through 2016. While Mark has a higher average income of $145,173 during that time, most of Mark's income is derived from operating his farming business which has been sporadic over the past three years. Most of Tamra's income is derived from leases and royalty income from her assets. Tamra has 720 mineral acres in Williams County upon which she had one producing well at the time of the trial. Tamra has the potential to derive a very substantial amount of income from her mineral interests.
 

 (Internal citations omitted.)
 

 [¶ 15] The district court found Tamra Knudson has a five-year average rental income of $86,516 from her expected rental and mineral royalty income. The court found Mark Knudson was purchasing a substantial amount of the farmland he received in the property division, Mark Knudson's farming business had difficult financial years recently due to low commodity prices, and those conditions had not changed. The court also considered Mark Knudson's monthly expenses. The court found:
 

 The Court recognizes a disparity in the parties' respective incomes and current earning ability. Considering Mark's current income and his expenses of approximately $9,567 per month, Mark does not have sufficient income to pay Tamra spousal support. Mark's income is necessary to meet his financial obligations and to maintain the ongoing operation of his farming business. Tamra receives substantial income-producing assets, cash and liquid assets. Tamra does not have any debt. Her standard of living established during the marriage
 
 *799
 
 can be sustained while she is earning her degree and becoming a licensed massage therapist, as well as thereafter. She is also capable of working and able to earn income. Her ability to earn income will increase after she obtains her degree and becomes a licensed massage therapist. Tamra is able to financially support herself in the lifestyle to which she has become accustomed while obtaining her massage therapy license without substantially depleting her assets.
 

 [¶ 16] The district court also found Tamra Knudson committed adultery during the marriage and was in an on-going extra-marital affair with another woman, she testified she is gay and was aware of her sexual orientation prior to the marriage, but she only recently disclosed her sexual orientation to Mark Knudson. The court found, "Tamra's failure to disclose her sexual orientation to Mark prior to their marriage and her involvement in an extra-marital affair constitute noneconomic marital fault which the Court finds caused, or at least substantially contributed to, the failure of the parties' marriage." The court explained:
 

 Tamra's marital fault is also afforded substantial weight by the Court in denying her claim for spousal support. Tamra's failure to inform Mark of her lesbian sexual orientation prior to the marriage is an important fact that she should have made Mark aware of prior to the marriage, and was a substantial factor in the failure of the parties' marriage. Additionally, Tamra engaged in an extramarital affair which was a proximate cause of the parties' divorce.
 

 [¶ 17] Tamra Knudson argues the district court erred by finding her sexual orientation constituted non-economic fault, and her failure to disclose her sexual identity twenty years ago should not preclude an award of spousal support. She claims she created a family with Mark Knudson, helped him build the farming operation, maintained a home, and cared for members of their extended family, and the fact that she was privately gay is irrelevant. She contends her failure to disclose her sexual identity or being homosexual are not legitimate grounds for finding non-economic fault and the court erred by relying on those factors to deny her request for spousal support.
 

 [¶ 18] We agree that a party's sexual orientation itself is not an appropriate factor to consider in deciding whether to award spousal support.
 
 Cf.
 

 Damron v. Damron
 
 ,
 
 2003 ND 166
 
 , ¶¶ 9-10,
 
 670 N.W.2d 871
 
 (holding a parent's sexual orientation, by itself, is not determinative of custody). But the district court did not find Tamra Knudson's sexual orientation constituted non-economic fault. Rather, the court found she engaged in an extra-marital affair and the affair was the proximate cause of the divorce and constituted non-economic fault. This Court has previously indicated it is appropriate for the district court to consider this type of non-economic fault in deciding whether to award spousal support.
 
 See
 

 Lohstreter v. Lohstreter
 
 ,
 
 1998 ND 7
 
 , ¶ 27,
 
 574 N.W.2d 790
 
 .
 

 [¶ 19] Mark Knudson testified Tamra Knudson's behavior changed starting in 2014, he ultimately learned she was having an affair, she refused to end the affair to save the marriage, they attempted to go to counseling, and she admitted she did not want to have an intimate relationship with a man ever again. He testified that he could no longer trust her and that she said she would never have an intimate or sexual relationship with him again. Mark Knudson testified the divorce was caused by the affair and by Tamra Knudson's decision that she did not want to have an intimate or sexual relationship with him. The evidence
 
 *800
 
 supports the district court's finding that Tamra Knudson's affair was a contributing factor to the deterioration of the marriage.
 

 [¶ 20] The district court also found Tamra Knudson's failure to disclose her sexual orientation prior to the marriage was a factor in the failure of the marriage constituting non-economic fault. There was no specific testimony that Tamra Knudson's decision not to disclose information about her sexual orientation before the parties married was a factor in the breakdown of the marriage. However, it is a reasonable inference that Tamra Knudson's failure to disclose her sexual orientation before the marriage contributed to its demise, when she testified she never wanted to be intimate with a man again. Even if we disagreed with the court on the inference drawn from the evidence, it is only one factor in the court's analysis and standing alone does not persuade us the district court's decision to deny spousal support was clearly erroneous.
 

 [¶ 21] The district court considered the
 
 Ruff
 

 -
 

 Fischer
 
 guidelines and made detailed findings about the relevant factors. The court also considered and made detailed findings about Tamra Knudson's need for spousal support and Mark Knudson's ability to pay. The court's overarching finding was that Mark Knudson did not have the ability to pay spousal support and Tamra Knudson did not have a need for spousal support after receiving the property awarded to her. The court found Tamra Knudson received substantial income-producing assets, including farmland capable of providing rental income and mineral interests that were currently providing oil and gas royalties. The court also found she received substantial amounts of cash and liquid assets and she did not have any debt. The court found her ability to earn income would increase once she obtained her degree and became a licensed massage therapist, and she was able to support herself financially in the lifestyle to which she had become accustomed while she obtained her license without substantially depleting her assets. The evidence supports the court's findings. We have previously affirmed a court's denial of spousal support when many of the
 
 Ruff
 

 -
 

 Fischer
 
 factors supported an award of spousal support but the requesting spouse had the ability to adequately address her current needs and the other spouse did not have the ability to pay.
 
 See
 

 Schmuck
 
 ,
 
 2016 ND 87
 
 , ¶¶ 20-21,
 
 882 N.W.2d 918
 
 .
 

 [¶ 22] After reviewing Tamra Knudson's arguments and the evidence in the record, we are not left with a definite and firm conviction that a mistake has been made. We conclude the district court's spousal support decision is not clearly erroneous.
 

 III
 

 [¶ 23] Tamra Knudson argues the district court erred in calculating her child support obligation. She contends the court improperly included in her gross income an oil and gas lease bonus and "wages" she received from Mark Knudson's farming operation.
 

 [¶ 24] Child support determinations involve questions of law subject to the de novo standard of review, findings of fact subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.
 
 Ferguson v. Wallace-Ferguson
 
 ,
 
 2018 ND 122
 
 , ¶ 21,
 
 911 N.W.2d 324
 
 . A court errs as a matter of law if it does not comply with the requirements of the child support guidelines.
 

 Id.
 

 [¶ 25] The child support guidelines, N.D. Admin. Code ch. 75-02-04.1, govern child support determinations. The
 
 *801
 
 amount of child support calculated under the guidelines is rebuttably presumed to be the correct amount of child support. N.D. Admin. Code § 75-02-04.1-13. "A correct finding of an obligor's net income is essential to determining the proper amount of child support."
 
 Thompson v. Johnson
 
 ,
 
 2018 ND 142
 
 , ¶ 9,
 
 912 N.W.2d 315
 
 (quoting
 
 Raap v. Lenton
 
 ,
 
 2016 ND 195
 
 , ¶ 5,
 
 885 N.W.2d 777
 
 ). "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." N.D. Admin. Code § 75-02-04.1-02(7). Child support calculations "are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income." N.D. Admin. Code § 75-02-04.1-02(8).
 

 [¶ 26] The district court must determine the obligor's net income and apply that amount to the child support guidelines to calculate the proper amount of support.
 
 Thompson
 
 ,
 
 2018 ND 142
 
 , ¶ 9,
 
 912 N.W.2d 315
 
 . Section 75-02-04.1-01(6), N.D. Admin. Code, defines net income and explains certain amounts are deducted from the obligor's total gross annual income to calculate the obligor's net income. Section 75-02-04.1-01(4)(a), N.D. Admin. Code, defines gross income for child support purposes as "income from any source, in any form," except for some specific exclusions. The child support guidelines give examples of "gross income" including:
 

 [S]alaries, wages, overtime wages, commissions, bonuses, employee benefits, currently deferred income, dividends, severance pay, pensions, interest, trust income, annuities income, gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, distributions of retirement benefits, receipt of previously deferred income to the extent not previously considered in determining a child support obligation for the child whose support is under consideration, veterans' benefits (including gratuitous benefits), gifts and prizes to the extent they annually exceed one thousand dollars in value, spousal support payments received, refundable tax credits, value of in-kind income received on a regular basis, children's benefits, income imputed based upon earning capacity, military subsistence payments, and net income from self-employment.
 

 N.D. Admin. Code § 75-02-04.1-01(4)(b). The definition of "gross income" is "very broad and is intended to include any form of payment to an obligor, regardless of source, which is not specifically excluded under the guidelines."
 
 Wilson v. Wilson
 
 ,
 
 2014 ND 199
 
 , ¶ 24,
 
 855 N.W.2d 105
 
 (quoting
 
 Berge v. Berge
 
 ,
 
 2006 ND 46
 
 , ¶ 12,
 
 710 N.W.2d 417
 
 ).
 

 A
 

 [¶ 27] Tamra Knudson argues the district court erred by including in her self-employment income a $280,000 oil and gas lease bonus she received in 2016 because it is nonrecurring income and beyond her control. She contends the lease bonus is like an atypical overtime wage or nonrecurring bonus for an employee under N.D. Admin. Code § 75-02-04.1-01(4)(a)(4) and it should be excluded from calculating her gross income. She claims is it unlikely, if not legally impossible, that she will receive another lease bonus similar to the 2016 bonus. She does not dispute that any royalties she earns as a result of the lease are self-employment income and should be included in her gross income to calculate her child support obligation.
 

 [¶ 28] The child support guidelines definition of "gross income" includes "income from any source" and specifically includes "net income from self-employment." N.D. Admin. Code. § 75-02-04.1-01(4)(b). The
 
 *802
 
 child support guidelines define "self-employment" as:
 

 [E]mployment that results in an obligor earning income from any business organization or entity which the obligor is, to a significant extent, able to directly or indirectly control. For purposes of this chapter, it also includes any activity that generates income from rental property, royalties, business gains, partnerships, trusts, corporations, and any other organization or entity regardless of form and regardless of whether such activity would be considered self-employment activity under the Internal Revenue Code.
 

 N.D. Admin. Code § 75-02-04.1-01(10).
 

 [¶ 29] Tamra Knudson argues the oil and gas lease bonus is not self-employment income because an obligor must be able to directly or indirectly control the income-generating property or activity for self-employment income and she does not have any control over the oil companies. Section 75-02-04.1-01(10), N.D. Admin. Code, defines self-employment as employment that results in the obligor earning income from any business organization which the obligor is able to directly or indirectly control. But the provision states self-employment also includes any activity that generates income from rental property or royalties.
 

 [¶ 30] The district court found the $280,000 mineral leasing bonus was self-employment income because it was an activity that generated income from the leasing of Tamra Knudson's property and, therefore, was a form of rental income. The evidence supports the court's finding that the lease bonus payment is a form of rental income. The child support guidelines self-employment income provisions do not specifically exclude this type of income from rental properties from the definition of self-employment income. We conclude the court properly determined the 2016 lease bonus was self-employment income.
 

 [¶ 31] Tamra Knudson argues the lease bonus should be excluded from her gross income like nonrecurring bonuses "over which the employee does not have significant influence or control," which are specifically excluded under N.D. Admin. Code § 75-02-04.1-01(4)(a)(4). She does not argue the lease bonus is excluded from gross income under N.D. Admin. Code § 75-02-04.1-01(4)(a)(4) ; rather, she contends the lease bonus should be treated like a nonrecurring employment bonus. The child support guidelines definition of income is very broad and is intended to include any form of payment to the obligor that is not specifically excluded by the guidelines.
 
 Berge
 
 ,
 
 2006 ND 46
 
 , ¶ 12,
 
 710 N.W.2d 417
 
 . Tamra Knudson does not argue that the lease payment is specifically excluded from income by any guideline provision, and she conceded at oral argument that the guidelines do not specifically address this type of bonus.
 

 [¶ 32] To the extent Tamra Knudson argues the child support guidelines should exclude atypical, non-recurring bonuses from mineral leases, we do not have authority to modify the child support guidelines.
 
 See
 

 Rath v. Rath
 
 ,
 
 2017 ND 138
 
 , ¶ 28,
 
 895 N.W.2d 315
 
 . The legislature has authorized the Department of Human Services to establish the guidelines, and any argument about how the guidelines should be amended would be better made to the Department of Human Services or the legislature.
 

 Id.
 

 [¶ 33] The 2016 lease payment is income from self-employment. The district court did not err by including the lease payment in Tamra Knudson's self-employment income for purposes of calculating her child support obligation.
 

 *803
 
 B
 

 [¶ 34] Tamra Knudson argues the district court improperly treated the money she received from Knudson Farms, the farming partnership Mark Knudson operates with his father, as "wages" and included it in her gross income. She contends it should be excluded from her income and included in Mark Knudson's income under N.D. Admin. Code § 75-02-04.1-05(1)(b)(2) because the money was a stipend and was not paid to her for services she provided to the farm.
 

 [¶ 35] Section 75-02-04.1-05, N.D. Admin. Code, governs how net income from self-employment is calculated, and states:
 

 1. Net income from self-employment means total income, for internal revenue service purposes, of the obligor:
 

 ....
 

 b. Increased by that amount, if any, for:
 

 ....
 

 (2) Payments made from the obligor's self-employment activity to a member of the obligor's household, other than the obligor, to the extent the payment exceeds the fair market value of the service furnished by the household member....
 

 2. "Member of the obligor's household" includes any individual who shares the obligor's home a substantial part of the time, without regard to whether that individual maintains another home.
 

 [¶ 36] The parties' tax returns show Knudson Farms paid Tamra Knudson $12,000 in 2016 and $19,500 or higher each year from 2012 through 2015. The district court considered Tamra Knudson's argument that the amounts she was paid should not be included in her income under N.D. Admin. Code § 75-02-04.1-05(1). The court found:
 

 Tamra has provided testimony in this case concerning extensive contributions and services that she has directly provided to the family's farming business in the Affidavits that she has previously filed with the Court. [Tamra] did not provide evidence as to the fair market value of the services that Tamra provided for the farming business during the applicable periods of time or the extent to which the wages she received exceeded the fair market value of the services that she provided. [Tamra] has not [met] her burden of establishing that the wages she received exceeded the fair market value of the services that she provided to Knudson Farms. Therefore, the Court finds that N.D. Admin. Code § 75-02-04.1-05(1)(b)(2) is not applicable to increase Mark's self-employment income.
 

 [¶ 37] The evidence supports the district court's findings. The parties' tax returns show Knudson Farms paid Tamra Knudson wages each year from 2012 through 2016. Tamra Knudson filed an affidavit in the case in which she stated she helped with whatever was asked related to the farm operation, including combining, working with the crops, applying fertilizer, seeding, cutting ditches, and driving semi. Tamra Knudson did not provide any evidence about how many hours she worked for the farm each year or the fair market value of those services or other evidence showing the amounts she was paid exceeded the value of the services she provided. She only claimed she testified the wages were paid as a stipend and were not paid for services she provided. We do not reweigh evidence or reassess witness credibility.
 
 See
 

 Nuveen v. Nuveen
 
 ,
 
 2012 ND 260
 
 , ¶ 11,
 
 825 N.W.2d 863
 
 . The evidence supports the court's findings. We conclude the court did not err by failing to include the income Knudson Farms paid to Tamra
 
 *804
 
 Knudson in Mark Knudson's net income from self-employment.
 

 IV
 

 [¶ 38] We conclude the district court did not err by denying Tamra Knudson's request for rehabilitative spousal support and the court did not misapply the law in calculating the parties' child support obligations. We affirm the judgment.
 

 [¶ 39] Lisa Fair McEvers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.
 

 I concur in the result.
 

 Jon J. Jensen
 

 Daniel J. Crothers