# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 77

Wendy Michele Willprecht,                     Plaintiff, Appellant, and Cross-Appellee

v.

Kevin John Willprecht,                      Defendant, Appellee, and Cross-Appellant

### No. 20190201

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John C. Irby, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices VandeWalle and Crothers joined. Justice McEvers filed an opinion concurring specially.

Jason W. McLean, Fargo, N.D., for plaintiff, appellant, and cross-appellee.

Robert J. Schultz, Fargo, N.D., for defendant, appellee, and cross-appellant.

# Willprecht v. Willprecht
## No. 20190201

**Tufte, Justice.**

[¶1]   Wendy Willprecht appeals and Kevin Willprecht cross-appeals from a judgment granting the parties a divorce, distributing the marital estate, awarding primary residential responsibility for the parties' children, and ordering child support.  We conclude the district court's property distribution is not clearly erroneous, but the court erred in calculating Kevin Willprecht's child support obligation.  We affirm in part, reverse in part, and remand.

## I

[¶2]   Wendy and Kevin Willprecht were married in 1999.  They had four minor children together at the time of the divorce trial.  Kevin Willprecht is a self-employed farmer, and the parties acquired farmland throughout the marriage.  In 2018, Wendy Willprecht sued for divorce.

[¶3]   The parties stipulated Wendy Willprecht will have primary residential responsibility for the children and Kevin Willprecht will have parenting time.  The district court adopted the parties' stipulation and incorporated it in the divorce judgment.

[¶4]   The district court held a bench trial on the remaining issues, including property division, spousal support, and child support.  The court distributed the parties' property and debts and awarded Wendy Willprecht a net property award of $2,076,302 and Kevin Willprecht a net property award of $3,562,998.  The court calculated Kevin Willprecht's child support obligation and ordered him to pay $3,092 per month in child support.  The court concluded no spousal support was required and ordered each party would be responsible for their own attorney's fees.

## II

[¶5] Kevin Willprecht moved to dismiss the appeal, arguing Wendy Willprecht has accepted substantial benefits of the judgment.  He argues that Wendy Willprecht accepted the real estate she was awarded, she sent letters

demanding he pay the credit card and bank debt, she threatened contempt if he did not pay the debt, and she demanded the rental income from farmland and half of the crop-price protection payment immediately even though no due date was set in the judgment. He contends Wendy Willprecht waived the right to appeal by accepting over $1 million in assets and taking affirmative steps to receive the benefits by drafting the deeds and requesting immediate payment.

[¶6] Generally, one waives the right to appeal by unconditionally, voluntarily, and consciously accepting a substantial benefit from a divorce judgment. *Tuhy v. Tuhy*, 2018 ND 53, ¶ 7, 907 N.W.2d 351. A party moving to dismiss the appeal must clearly establish waiver of the right to appeal by the other party. *Id.* This Court has sharply limited the waiver rule in divorce cases. *Id.* We have said:

> The party objecting to the appeal has the burden of showing the benefit accepted by the appealing party is one which the party would not be entitled to without the decree. There must be unusual circumstances, demonstrating prejudice to the movant, or a very clear intent on the part of the appealing party to accept the judgment and waive the right to appeal, to keep this Court from reaching the merits of the appeal.

*Id.*

[¶7] Kevin Willprecht does not allege he is prejudiced. Wendy Willprecht argues she should receive a greater share of the property as well as spousal support. Kevin Willprecht does not argue that the district court erred in distributing the marital estate or that Wendy Willprecht is entitled to less than she was awarded. Wendy Willprecht did not receive and accept any benefits that she would not be entitled to receive if the judgment were reversed. *See Eberle v. Eberle*, 2009 ND 107, ¶ 24, 766 N.W.2d 477; *Sommers v. Sommers*, 2003 ND 77, ¶ 6, 660 N.W.2d 586. Kevin Willprecht has not established that Wendy Willprecht clearly waived the right to appeal. We deny his motion to dismiss the appeal.

2

III

[¶8]   Wendy Willprecht argues the district court erred in distributing the marital estate.

A

[¶9]   Wendy Willprecht argues the district court erred in determining the value of the parties' property.  She contends the court misapplied N.D.C.C. § 14-05-24, the parties agreed to the valuation for some of the property but did not reach an agreement on the valuation for other property, and the court used a different valuation date to determine the value of the other property.  She claims the agreed-to valuation date must be used for all of the parties' property and different dates cannot be used for different property.

[¶10] A district court's findings on the value of marital property will not be reversed on appeal unless they are clearly erroneous.  *Lee v. Lee*, 2019 ND 142, ¶ 6, 927 N.W.2d 104.  A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, on the entire record, this Court is left with a definite and firm conviction a mistake has been made.  *Id.*  "A choice between two permissible views of the evidence is not clearly erroneous if the [district] court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations."  *Id.* (quoting *Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573).  The court's valuation depends on the evidence the parties present.  *Lee*, at ¶ 6.

[¶11] The district court found the parties agreed on the value of many assets, but they disagreed about the values of the business assets, particularly the harvested crops in storage.  The court found there were three potential dates to use for valuation: "[t]he date of separation (December 2017), the date that the action was initiated (May 2018), and the date of trial (March 3, 2019)." The court decided to use the date of separation, finding Kevin's valuation as of that date was the most "well-supported" by the evidence.

3

[¶12] Section 14-05-24(1), N.D.C.C., governs the district court's distribution of the marital estate, including the valuation of marital property, stating:

> When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties. Except as may be required by federal law for specific property, and subject to the power of the court to determine a date that is just and equitable, the valuation date for marital property is the date mutually agreed upon between the parties. If the parties do not mutually agree upon a valuation date, the valuation date for marital property is the date of service of a summons in an action for divorce or separation or the date on which the parties last separated, whichever occurs first.

[¶13] The primary purpose in interpreting a statute is to determine the legislature's intent. *Markegard v. Willoughby*, 2019 ND 170, ¶ 9, 930 N.W.2d 108. We interpret statutes as a whole and harmonize them to give meaning to related provisions. *Baker v. Autos, Inc.*, 2019 ND 82, ¶ 10, 924 N.W.2d 441. We construe statutes to give effect to each provision, so no part is rendered inoperative or superfluous. N.D.C.C. § 1-02-38. We give meaning and effect to every word, phrase, and sentence. *Baker*, at ¶ 10. We give words in a statute their plain, ordinary, and commonly understood meaning, unless they are defined by statute or a contrary intention plainly appears. N.D.C.C. § 1-02-02. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05.

[¶14] The plain language of N.D.C.C. § 14-05-24(1) states that the valuation date "is the date mutually agreed upon between the parties." If the parties do not agree upon a valuation date, the valuation date "is the date of service of a summons . . . or the date on which the parties last separated, whichever occurs first." The statute does not preclude an agreement to different valuation dates for different items of property. If the parties agree to a valuation date only for some property and not for other property, the statutory default will supply the date for valuing the other property.

4

[¶15] Here, the parties agreed to the same valuations for most of the assets in the marital estate. For the assets the parties were unable to agree on, the district court determined the value of the property as of the date of separation, which was the default under the statute. The court did not misapply N.D.C.C. § 14-05-24.

B

[¶16] Wendy Willprecht argues the district court erred by failing to value and include the 2018 crop in the property distribution. She contends the court should have used the crop insurance to determine the value of the crop because the evidence established the crops were insured under revenue protection crop insurance and guaranteed Kevin Willprecht would receive at least a set amount for the crops.

[¶17] The district court used the date of the parties' separation to determine the value of property that the parties were unable to agree upon, including the crops. The court found the parties separated in December 2017. The 2018 crop did not exist at the time of the separation. The court did not err by failing to include the 2018 crops in the property distribution.

C

[¶18] Wendy Willprecht argues the district court's distribution of the marital estate was inequitable and is not supported by the court's findings. She claims Kevin Willprecht received a net award of $3,562,998 and she received a net award of $2,076,302, including a $750,000 equalization payment, which is a difference of $1,486,696. She contends the court's explanation for the substantial disparity is inadequate because it did not address her contribution to the marriage, Kevin Willprecht's behavior and noneconomic fault, or the 400% gains in the value of the farmland.

[¶19] A district court's property distribution will not be reversed unless the court's findings are clearly erroneous. *Swanson v. Swanson*, 2019 ND 25, ¶ 5, 921 N.W.2d 666. The district court must make an equitable property distribution. N.D.C.C. § 14-05-24(1). The court must include all of the parties'

5

assets and debts in the marital estate and then consider the *Ruff-Fischer* guidelines to determine an equitable distribution. *Swanson*, at ¶ 6. The *Ruff-Fischer* guidelines include the following factors:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Lee*, 2019 ND 142, ¶ 12, 927 N.W.2d 104 (quoting *Schultz v. Schultz*, 2018 ND 259, ¶ 27, 920 N.W.2d 483). The court is not required to make specific findings for each factor, but it must specify a rationale for its decision. *Lee*, at ¶ 12. The distribution does not need to be equal to be equitable, but a substantial disparity must be explained. *Swanson*, at ¶ 9.

[¶20] The district court found Wendy Willprecht was 42 years old and Kevin Willprecht was 45 years old at the time of the trial, they were married in 1999, they own a parcel of real property containing the marital home, and they also own several hundred acres of farmland. The court found Kevin Willprecht is a self-employed farmer; he is the sole owner of a family farm corporation, which owns the farm equipment and conducts the farming operations; and he owns the farmland the corporation farms and he collects the rent on the land. The parties agreed they would include the assets and liabilities held by the corporation with their own assets and liabilities instead of trying to place a value on the shares of stock in the corporation. The court found:

> Kevin farmed for several years prior to the marriage. With the exception of a quarter section of property located in Cass County purchased by the parties after the marriage, the farmland came from Kevin's family and was either purchased at a discount or was gifted, outright, to Kevin. In particular, the tracts described in the Rule 8.3 listing as Tracts 9 and 7 described as the South half of the Southwest quarter of Section 8 and the North half section of the Northwest quarter Section 17, Township 130 North, Range 53

6

West, had a valuation agreed upon by the parties of $864,273. These tracts were a gift from Kevin's parents.

The court awarded Kevin Willprecht most of the farmland, vehicles, crops, personal property in his possession, farm equipment, and all of the parties' debts. The court awarded Wendy Willprecht the marital home, a quarter section of real property, her vehicle, an IRA, half of the crop protection payment, and the personal property in her possession. The court further ordered Kevin Willprecht to make an equalization payment of $750,000 to Wendy Willprecht. The court ordered the equalization payment be made in fifteen annual installments with three percent interest, for payment in the amount of $62,825 per installment, starting April 1, 2020.

[¶21] The district court explained the disparity, stating:

> The ending result of the division of property is that the plaintiff will receive approximately 37 percent and the defendant will receive approximately 63 percent of the net marital estate. When considering the outright gifts of Tracts 7 and 9 from Kevin's parents to Kevin for land valued in this divorce at $864,273, Kevin's testimony that other gifts were given by his parents to him, and that other land purchased from his parents was purchased at a discounted price, any disparity has been accounted for. The Court also takes into account that crop assets are essentially "double counted." While crops are an asset, crops are also next year's income and have been used to calculate Kevin's income for child support purposes.
> . . . .
> The Court finds that the division of property, while not equal, is equitable and is in line with the *Ruff-Fischer* Guidelines. Taking into account the outright gift of property from Kevin's family to him valued now at $864,273, discounted land purchases, other gifts, and the "double counting" of crop assets, there is no real substantial disparity in the assets awarded to each party.

[¶22] "[S]eparate property, whether inherited or otherwise, must initially be included in the marital estate, and [this Court has] never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse." *Swanson*, 2019 ND 25, ¶ 9, 921 N.W.2d

7

666. But the property's origin is one factor the court may consider. *Id.* This Court has recognized "'the importance of preserving the viability of a business operation like a family farm,' and 'liquidation of an ongoing farming operation or business is ordinarily a last resort.'" *Id.* at ¶ 10 (quoting *Rebel v. Rebel*, 2016 ND 144, ¶ 11, 882 N.W.2d 256).

[¶23] The district court explained Kevin Willprecht's parents gifted him some of the farmland and sold him other land at a discounted price. The farmland is used in the farming operation. The court considered the source of the property and the *Ruff-Fischer* guidelines. The court allocated most of the farmland and all of the parties' debt to Kevin Willprecht, and also ordered him to pay $750,000 to Wendy Willprecht as an equalization payment. The court adequately explained the disparity in the distribution. The court's distribution was not induced by an erroneous view of the law, and the evidence supports the court's findings.

[¶24] Wendy Willprecht argues the district court erred by making the equalization payment over time and delaying the payment for one year without explanation. When an equalization payment is ordered, the court may award interest at any appropriate rate and may order the beginning of the payments on any appropriate date. *Schultz*, 2018 ND 259, ¶ 29, 920 N.W.2d 483. A court has discretion in setting the rate of interest and the beginning date. *Id.* The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* The district court did not abuse its discretion in deciding the starting date of the equalization payments.

[¶25] We affirm the district court's property division, concluding it is not clearly erroneous.

IV

[¶26] Wendy and Kevin Willprecht argue the district court erred in calculating Kevin Willprecht's child support obligation.

8

[¶27] Child support determinations involve questions of law, which are fully reviewable, findings of fact subject to the clearly erroneous standard, and in some areas, matters of discretion subject to the abuse of discretion standard. *Minyard v. Lindseth*, 2019 ND 180, ¶ 6, 930 N.W.2d 626. The child support guidelines, N.D. Admin. Code ch. 75-02-04.1, govern child support determinations. *Thompson v. Johnson*, 2018 ND 142, ¶ 9, 912 N.W.2d 315. "A court errs as a matter of law if it does not comply with the requirements of the child support guidelines." *Wolt v. Wolt*, 2019 ND 155, ¶ 5, 930 N.W.2d 589.

A

[¶28] Wendy Willprecht argues the district court failed to properly apply the child support guidelines to determine Kevin Willprecht's child support obligation. She claims the court should have determined a five-year average of Kevin Willprecht's income from self-employment, instead of the three-year average the court used.

[¶29] A correct finding of net income is necessary to calculate the proper amount of support. *Minyard*, 2019 ND 180, ¶ 7, 930 N.W.2d 626. Section 75-02-04.1-01(6), N.D. Admin. Code, defines net income and explains certain amounts are deducted from the obligor's gross income to determine the net income. Gross income is defined as "income from any source, in any form," except for certain specific exclusions. N.D. Admin. Code § 75-02-04.1-01(4). After the district court determines an obligor's net income, the court applies that amount to the guidelines to calculate the child support obligation. *Thompson*, 2018 ND 142, ¶ 9, 912 N.W.2d 315. The amount of child support calculated under the guidelines is "rebuttably presumed to be the correct amount of child support[.]" N.D. Admin. Code § 75-02-04.1-13.

[¶30] Income must be documented through the use of tax returns, wage statements, and other information to fully apprise the court of all gross income. N.D. Admin. Code § 75-02-04.1-02(7). "Where gross income is subject to fluctuation, regardless of whether the obligor is employed or self-employed, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided." *Id.* Recent past circumstances are generally a reliable indicator of future circumstances concerning income.

9

N.D. Admin. Code § 75-02-04.1-02(8). "If circumstances that materially affect the child support obligation have changed in the recent past or are very likely to change in the near future, consideration may be given to the new or likely future circumstances." *Id.* "A district court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not reasonably reflect the obligor's income without ordering the parties to present more information and making specific findings of fact." *Thompson*, 2018 ND 142, ¶ 10, 912 N.W.2d 315.

[¶31] Section 75-02-04.1-05, N.D. Admin. Code, applies to determine net income from self-employment, stating:

> Self-employment activities may experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income. When self-employment activity has not been operated on a substantially similar scale for five years, a shorter period may be used.

N.D. Admin. Code § 75-02-04.1-05(4).

[¶32] The district court found:

> Taking into account the current agricultural conditions and the fact that no evidence was provided that would indicate that these conditions would change in the near future, Kevin's three-year income average is appropriate under the law and guidelines to be used to base his child support calculation.

After reducing Kevin Willprecht's three-year average income by the amount of the rent for the property in Cass County that was awarded to Wendy Willprecht, the court found Kevin Willprecht's income for child support purposes is $144,078.

[¶33] Wendy Willprecht presented the parties' joint tax returns for 2013 through 2017 showing Kevin Willprecht's income from the farming operation and land rentals. Kevin Willprecht presented the farm corporation's tax

10

returns for 2012 through 2017 and his 2018 individual tax return. The parties presented sufficient evidence for the district court to calculate a five-year average of Kevin Willprecht's self-employment income, but the court found a three-year average would be appropriate given current agricultural conditions. We have said, "The guidelines must be applied using common sense and in consideration of the circumstances." *Brew v. Brew*, 2017 ND 242, ¶ 28, 903 N.W.2d 72 (quoting *Rathbun v. Rathbun*, 2017 ND 24, ¶ 9, 889 N.W.2d 855). It is not clear what evidence in the record the court was referring to. The court did not make sufficient findings supporting its decision to calculate the child support obligation on a three-year average of Kevin Willprecht's self-employment income.

[¶34] The district court erred by failing to make sufficient findings to support using a three-year average to determine Kevin Willprecht's self-employment income to calculate his child support obligation.

B

[¶35] Wendy and Kevin Willprecht argue the district court erred by failing to include a child support step-down provision and ordering Kevin Willprecht's child support obligation would not be reduced as each child reaches the age of majority. They argue the court's decision does not comply with the child support guidelines and the court cannot refuse to order a step-down in the amount of support as each child reaches the age of majority to alleviate the need for spousal support.

[¶36] The district court ordered:

> Kevin shall pay Three Thousand Ninety-Two Dollars ($3,092) per month child support for the minor children commencing May 1, 2019, and continuing on or before the 1st day of each month thereafter until such time as each child reaches the age of 18, marries, dies, or is emancipated. The child support obligation is based upon the North Dakota Child Support Guidelines and Kevin's net monthly income of $8,205.
> . . . .

11

Kevin will not be entitled to "step down" calculations of his child support obligation as each child become ineligible for child support. The Court makes this determination in conjunction with the decision not to award spousal support as set forth below.

[¶37] The district court is limited in the ability to award post-minority child support to circumstances under which the parents have a statutory legal duty to support adult children. *See* N.D.C.C. § 14-09-08.2; *Larson v. Larson*, 2005 ND 67, ¶¶ 12-15, 694 N.W.2d 13. The court erred by ordering the child support amount will not decrease as each child reaches the age of majority.

C

[¶38] The district court erred as a matter of law by failing to comply with the child support guidelines. We therefore reverse the court's child support decision and remand for the court to recalculate Kevin Willprecht's self-employment income according to the most recent five years or make sufficient findings to support using a three-year average and to include a step-down calculation.

V

[¶39] Wendy Willprecht argues the district court erred by denying her request for spousal support. She contends that the court did not properly consider her need for support and Kevin Willprecht's ability to pay and that the court improperly tied its decision on spousal support to its child support decision.

[¶40] A decision about spousal support is subject to the clearly erroneous standard of review. *Schmuck v. Schmuck*, 2016 ND 87, ¶ 6, 882 N.W.2d 918. In deciding whether spousal support is appropriate, the court must consider the *Ruff-Fischer* guidelines, the needs of the spouse seeking support, and the ability of the other spouse to pay. *Id.* Property distribution and spousal support are interrelated and often must be considered together. *Id.*

[¶41] The district court denied Wendy Willprecht's request for spousal support. The court considered the *Ruff-Fischer* factors. The court also made

12

findings about Wendy Willprecht's need for support and Kevin Willprecht's ability to pay, stating:

> Wendy works part-time for Sargent County at Emergency Management and occasionally substitute teaches. Her income is approximately $2,100 per month. She is also provided with a single health insurance coverage. She will also be netting approximately $19,333 in farm rent. Her annual earned income ($2,100 x 12) and her farm rent, $19,333 is $44,533. Kevin's annual projected income, before taxes is $144,078. From this amount he will be paying approximately $24,000 in health insurance premiums. Kevin's annual child support obligation will exceed $36,000 per year. In addition, he will be making an equalization payment annually to Wendy in the amount of approximately $63,000. As a result, Wendy will have more spendable income available to her household than Kevin. Kevin is obligated to pay all of the debts of the parties. Wendy has a quality home with no mortgage obligation against it. Her vehicle is paid for. The Court did not include any "step-down" calculations for Kevin's child support. This was done deliberately by the Court in light of the income disparity of the parties.

The court concluded it would not award either party spousal support.

[¶42] The district court explained that its decision not to include a step-down calculation for the child support and modify the obligation as the children each reach the age of majority was done deliberately to compensate for the disparity in the parties' incomes. The court's decision indicates the child support amount is to equitably balance the burdens of the divorce. This is improper. *See Stock v. Stock*, 2016 ND 1, ¶ 23, 873 N.W.2d 38. Child support is for the care and maintenance of the minor child, and spousal support is intended to equalize the burdens of the divorce. *Id.*; *see also* N.D.C.C. § 14-09-08 (stating parents have a duty to support their children). As we explained in *Stock*, if the court found Wendy Willprecht established a need for $3,092 per month but Kevin Willprecht currently lacks the ability to pay that amount, the court should have explicitly stated as much. *See Stock*, at ¶ 23.

13

[¶43] Because the district court tied its spousal support decision to its child support decision and we are reversing the child support decision and remanding for the court to include a step-down calculation for the child support, we are unable to properly review the spousal support decision. We reverse the court's spousal support decision and remand for reconsideration.

VI

[¶44] Wendy Willprecht argues the district court erred by failing to award her attorney's fees. She claims the court failed to adequately explain its decision denying her request for attorney's fees.

[¶45] The district court has discretion to award attorney's fees in divorce proceedings under N.D.C.C. § 14-05-23. *See Heinle v. Heinle*, 2010 ND 5, ¶ 32, 777 N.W.2d 590. The district court's decision will not be reversed on appeal unless the court abused its discretion. *Id.* We have explained the district court must balance the requesting party's need for attorney's fees against the other party's ability to pay. *Id.* "The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case." *Id.* (quoting *Reiser v. Reiser*, 2001 ND 6, ¶ 15, 621 N.W.2d 348).

[¶46] Wendy Willprecht requested attorney's fees, arguing that Kevin Willprecht has the ability to pay and that she demonstrated her need for fees through her testimony and other evidence. The district court denied her request, stating, "Each party will be responsible for their own attorney's fees." The court did not provide any further explanation.

[¶47] Because the district court did not adequately explain its decision denying Wendy Willprecht's request for attorney's fees, we are unable to determine whether the court properly considered the factors and whether it properly applied the law. *Deyle v. Deyle*, 2012 ND 248, ¶ 23, 825 N.W.2d 245. We remand for reconsideration and for the court to make adequate findings explaining its decision.

14

## VII

[¶48] We have considered the remaining issues and arguments and determine they are either unnecessary to our decision or are without merit. We affirm the judgment in part, reverse in part, and remand for further proceedings consistent with this opinion.

[¶49]    Jerod E. Tufte
       Gerald W. VandeWalle
       Daniel J. Crothers
       Jon J. Jensen, C.J.

**McEvers, Justice, concurring specially.**

[¶50] I agree with and join the majority in sections I, II, IV, V, VI, and VII. I concur specially in section III.

[¶51] Respectfully, I think the majority has oversimplified Wendy Willprecht's argument by stating "[s]he claims the agreed-to valuation date must be used for all of the parties' property and different dates cannot be used for different property." Majority, at ¶ 9. Wendy Willprecht argued that N.D.C.C. § 14-05-24 was ambiguous. In her argument regarding the interpretation following the amendment of N.D.C.C. § 14-05-24, she states:

> However, it is unclear what happens when some valuation dates are agreed to and others are not.
> The plain language of the statute refers to a singular valuation date for the marital property. N.D.C.C. § 14-05-24(1). It does not appear to account for situations where the parties may agree on values from one date and then attempt to apply different valuation dates to other properties that will benefit his or her claim. In interpreting a statute, this Court's primary goal is to ascertain the intent of the legislature by first looking to the plain language of the statute and giving each word of the statute its ordinary meaning. *Wilkens v. Westby*, 2019 ND 186, ¶ 6, 931 N.W.2d 229. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Id.* Lastly, this Court presumes the legislature did not intend an absurd or ludicrous result or unjust consequences, and it construes statutes in a practical

manner, giving consideration to the context of the statutes and the purpose for which they were enacted. *Id.*

Moreover, the District Court also expressed a level of uncertainty with regard to this statute. At one point the District Court stated that it was afforded some level of flexibility and that it is not bound by the initiation of the action. Later, when discussing the admissibility of crop insurance information found in Exhibit 26, Kevin argued that the legislature provided a set timeframe for valuation. Wendy provided a counter-argument that in a situation where a party could manipulate values—such as the nature of farming—relying solely on the date of separation without discretion would produce a result that was not intended by the legislature. The District Court overruled Kevin's objection as to the line of questioning. However, both Kevin and Wendy made claims that were rational within the meaning of the statute. There is ambiguity in N.D.C.C. § 14-05-24 (1). . . . To allow for the use of one date, agreed upon after the date of commencement of the action for some property, while allowing for a party to withhold agreement on the valuation of other property on that same date because it may not benefit him or her, would lead to a ludicrous and unjust result.

In cases where there are issues as to valuation dates *and* agreed upon valuations, the reasonable application of the statu[t]e is not to apply separate dates for each piece of property. Rather, the logical approach would be to use the date that was agreed to or the valuation closest to that date. In applying different valuation dates to different properties, when the majority of the property was valued post-commencement, the District Court committed an error as a matter of law. It committed that error because the statute itself is flawed and ambiguous.

[¶52] I agree with Wendy Willprecht that the statute is ambiguous. I also agree that a party may withhold agreement on the valuation of certain property because it may not benefit him or her, which may lead to a ludicrous and unjust result. However, I disagree with her that reversal is required.

[¶53] I maintain my previous position that the statute is ambiguous and that the legislature intended to give district court's discretion in deciding the valuation date when parties do not agree under N.D.C.C. § 14-05-24(1). *Messmer v. Messmer*, 2020 ND 62, ¶¶ 24-29 (McEvers, Justice, concurring in

16

part and dissenting in part). If the court has discretion on the valuation date, the gamesmanship described by Wendy Willprecht can be dealt with to avoid a ludicrous or unjust result.

[¶54] The district court appears to have applied its discretion rather than deciding it must use the earliest date provided in N.D.C.C. § 14-05-24(1). In its memorandum opinion, the court stated:

> The purpose of N.D.C.C. § 14-05-24 is to give the Court a frame of reference in which to value an otherwise potentially moving target. Farms are somewhat unique in that a crop in the ground is valued is differently than crop in the bin. The Court sees three potential dates for valuation. The date of separation (December 2017), the date that the action was initiated (May 2018), and the date of trial (March 3, 2019). None of these three dates involve growing crop. It could be argued that some crop was in the ground in May of 2018. Only speculative evidence was presented to the Court as to what was actually in the ground or its value at that time. Given the consistency of the farming operation and the fact that growing crop is not in consideration, the snapshot of crop values provided to the Court in December 2017 is likely very consistent to what would be snapshot of crop values at the date of trial. Again, there was no evidence as to the actual value of growing crop in the ground in May 2018. In May 2018, much of the farm's crop assets may have been in the ground. While estate tax litigators may place some type of income in respect of a decedent value on growing crops, the reality is that this is the point of time at which most crop assets are at risk. The Court finds Kevin's valuation to be the most useful and most well-supported valuation of harvested crop assets.

17

[¶55] The parties here agreed on multiple valuation dates in regard to the following property: 1) personal property with an appraisal date of July 17, 2018; 2) farmland with an appraisal date of September 14, 2018; and 3) the marital home with an appraisal date of October 24, 2018. They did not agree on which date to value the crops. While I may not have chosen the date of separation to value the crops, I cannot say the district court abused its discretion in doing so. Therefore, I concur with the majority that the district court, on this issue, should be affirmed.

[¶56] Lisa Fair McEvers