# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 17

Wendy Michele Willprecht,                                              Plaintiff and Appellee

  v.

Kevin John Willprecht,                                              Defendant and Appellant

## No. 20200195

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John C. Irby, Judge.

REVERSED AND REMANDED.

Opinion of the Court, by Crothers, Justice, in which Chief Justice Jensen, and Justices VandeWalle and Tufte joined. Justice McEvers filed an opinion concurring in part and dissenting in part.

Jason W. McLean, Fargo, ND, for plaintiff and appellee.

Robert J. Schultz, Fargo, ND, for defendant and appellant.

# Willprecht v. Willprecht
## No. 20200195

**Crothers, Justice.**

[¶1]   Kevin Willprecht appeals from an amended judgment altering his child support and spousal support obligations. Kevin Willprecht argues the district court erred in awarding spousal support without reconsidering the Ruff-Fischer guidelines, by failing to analyze Wendy Willprecht's spousal need as reflected by her living expenses, and because the spousal support award exceeded Kevin Willprecht's ability to pay. We reverse and remand the district court's spousal support award for further proceedings consistent with this opinion.

I

[¶2]   Wendy and Kevin Willprecht were married on December 18, 1999. They have four children together, three of whom remain minors. Wendy commenced this divorce action in May 2018 and trial was held on March 4-5, 2019. In its original decision the district court determined Wendy Willprecht was not entitled to spousal support. The court awarded Wendy Willprecht assets totaling $2,076,302, including an equalization payment of $750,000. The equalization payment was to be paid by Kevin Willprecht at $62,825 per year for 15 years with interest at 3%.

[¶3]   Both parties appealed. *Willprecht v. Willprecht*, 2020 ND 77, 941 N.W.2d 556. This Court affirmed the allocation of assets and liabilities. *Id*. at ¶ 25. This Court concluded it was reversible error to fail to include a step-down provision for child support and remanded the issue of spousal support because the child support obligation was originally tied into the district court's decision on spousal support. *Id*. at ¶ 43. On remand, the district court held a status conference and asked what would be required to "button this one up." Kevin Willprecht requested additional findings based on the record. The district court agreed and requested each party submit written arguments.

1

[¶4] The district court issued an amended judgment on July 1, 2020. In the amended judgment, Kevin Willprecht's child support obligation for four children was $3,168 per month until September 2020. With the step-down provision, Kevin Willprecht's obligation decreased to $2,991 per month for three children in October 2020, $2,496 per month for two children in July 2023, and $1,509 per month for one child in July 2026. Under the step-down provision, Kevin Willprecht's total child support obligation is $80,781 less than the obligation established in the district court's initial decision.

[¶5] In addressing the spousal support request, the court made the following findings:

> "In this Court's Memorandum Opinion and Order of April 29, 2019, the situation of the parties was considered using the Ruff-Fischer Guidelines. In sum, the Court found that given Wendy's income and receipt of an annual property settlement equalization payment more cash would be flowing into her household than would be remaining in Kevin's. In addition, Kevin paid all of the debts of the parties, including household expenses that were put on a credit card. Those considerations aside, there does remain a disparity in income. It was the intention of this Court to provide what amounted to temporary rehabilitative spousal support by not allowing Kevin a 'step-down' in his child support calculations. Clearly, that was an error. However, Kevin's child support obligation will diminish over time. This will lead to a greater ability to pay spousal support.

> "Given the increased ability to pay due to a diminishing child support obligation, some form of rehabilitative spousal support is appropriate. Wendy has made a compelling argument that she should be entitled, under all circumstances, to an award of rehabilitative spousal support in the amount of $1,030 for the months of June 2020 through September 2020, and increasing that award to $1,735 per month in October 2020 through June 2028. This award of rehabilitative spousal support is made with full recognition that Kevin may have to tap into his equity to make the payments. The Judgment of this Court will be amended to include rehabilitative spousal support as indicated herein. The

2

rehabilitative spousal support will terminate prior to the ordered expiration should Wendy cohabitate, remarry, or die."

Kevin Willprecht's total spousal support obligation to Wendy Willprecht under the amended judgment is $165,475. Kevin Willprecht appeals from that judgment.

II

[¶6] Kevin Willprecht asserts the district court erred in awarding spousal support without reconsidering the Ruff-Fischer guidelines. On remand, rather than re-analyzing the Ruff-Fischer guidelines, the district court referred to its analysis of those guidelines in the original decision.

[¶7] A decision on spousal support is subject to the clearly erroneous standard of review. *Schmuck v. Schmuck*, 2016 ND 87, ¶ 6, 882 N.W.2d 918. The district court must consider the Ruff-Fischer guidelines when determining if an award of spousal support is appropriate. *Overland v. Overland*, 2008 ND 6, ¶ 16, 744 N.W.2d 67. The Ruff-Fischer guidelines are: (1) the respective ages of the parties; (2) the parties' earning abilities; (3) the duration of the marriage and the conduct of the parties during the marriage; (4) their station in life; (5) the circumstances and necessities of each party; (6) the health and physical condition of each party; (7) their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage; and (8) other matters as may be material. *Willprecht*, 2020 ND 77, ¶ 19. A mechanical application of the Ruff-Fischer guidelines is not required, but the court must explain the rationale for its decision. *Id.* Property distribution and spousal support are interrelated and often must be considered together. *Id.* at ¶ 40.

[¶8] In the district court's original findings of fact, conclusions of law, and order for judgment, it concluded:

> "As with property division, the Court must consider the Ruff-Fischer Guidelines in making its determination of spousal support. The parties were 42 and 45 years of age respectively, at the date of the hearing. Both parties are healthy. Kevin's drinking appears to

3

be the root cause of the demise of this near 20-year marriage. Although, the parties accumulated farm assets during the course of their marriage, they appeared to be living a life typical of a middle-income couple. They owned a nice home, drove decent vehicles, provided for their children and took occasional family vacations.

"Wendy works part-time for Sargent County at Emergency Management and occasionally substitute teaches. Her income is approximately $2,100 per month. She is also provided with a single health insurance coverage. She will also be netting approximately $19,333 in farm rent. Her annual earned income ($2,100 x 12) and her farm rent, $19,333 is $44,533. Kevin's annual projected income, before taxes is $144,078. From this amount he will be paying approximately $24,000 in health insurance premiums. Kevin's annual child support obligation will exceed $36,000 per year. In addition, he will be making an equalization payment annually to Wendy in the amount of approximately $63,000. As a result, Wendy will have more spendable income available to her household than Kevin. Kevin is obligated to pay all of the debts of the parties. Wendy has a quality home with no mortgage obligation against it. Her vehicle is paid for. The Court did not include any 'step-down' calculations for Kevin's child support. This was done deliberately by the Court in light of the income disparity of the parties."

[¶9] In its amended order the district court did not address each of the guidelines. However, the court referenced its previous analysis of the Ruff-Fischer guidelines. The court was not required to engage in a mechanical application of the Ruff-Fischer guidelines as part of the rationale for its determination. *Willprecht*, 2020 ND 77, ¶ 19. While property distribution and spousal support are ordinarily considered together, the court did not have the option to re-analyze property distribution here because that allocation was affirmed on the first appeal. *Id.* at ¶ 25; *Viscito v. Christianson*, 2016 ND 139, ¶ 7, 881 N.W.2d 633 (quoting *Carlson v. Workforce Safety & Ins.*, 2012 ND 203, ¶ 16, 821 N.W.2d 760) ("The mandate rule, a more specific application of law of the case, requires the trial court to follow pronouncements of an appellate court on legal issues in subsequent proceedings of the case and to carry the

4

[appellate court's] mandate into effect according to its terms. . . . and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms."). The only issues on remand were child support and spousal support. Under these circumstances, the court's incorporation of its previous Ruff-Fischer analysis rather than re-analyzing all of the factors was not clearly erroneous.

III

[¶10] Kevin Willprecht argues the district court failed to consider Wendy Willprecht's need for spousal support.

[¶11] The district court must make spousal support awards "in consideration of the needs of the spouse seeking support and of the supporting spouse's needs and ability to pay." *Overland,* 2008 ND 6, ¶ 16. District courts are "not required to complete a calculation to ensure each party's assets, debts, and expenses are accounted for in determining spousal support; however, a clear description of the financial situation of each party is helpful for this Court in understanding the district court's rationale in awarding spousal support." *Berg v. Berg,* 2018 ND 79, ¶ 11, 908 N.W.2d 705 (citing *Ulsaker v. White,* 2009 ND 18, ¶ 9, 760 N.W.2d 82). "'We will not set aside the trial court's determinations on property division or spousal support for failure to explicitly state the basis for its findings if that basis is reasonably discernible by deduction or inference.'" *Lindberg v. Lindberg,* 2009 ND 136, ¶ 31, 770 N.W.2d 252 (quoting *Routledge v. Routledge,* 377 N.W.2d 542, 545 n.1 (N.D. 1985); *Meyer v. Meyer,* 2004 ND 89, ¶ 23, 679 N.W.2d 273). However, remand is necessary where we are unable to discern the basis for a district court's spousal support decision. *Lindberg,* at ¶ 31.

[¶12] When discussing Wendy Willprecht's monthly living expenses and needs in its initial decision, the district court stated:

> "Wendy has a quality home with no mortgage obligation against it. Her vehicle is paid for. The Court did not include any 'step-down' calculations for Kevin's child support. This was done deliberately

5

by the Court in light of the income disparity of the parties. The Court concludes that no spousal support is required."

The district court did not address Wendy Willprecht's estimated monthly living expenses or need for support in its memorandum and order on remand. Rather, the court addressed only Kevin Willprecht's increased ability to pay, and stated, "Wendy has made a compelling argument that she should be entitled, under all circumstances, to an award of rehabilitative spousal support. . . ." While the court was not required to provide a precise calculation of Wendy Willprecht's need, it was required to provide a discernible basis for the court's decision. Without further explanation of Wendy Willprecht's need for spousal support, we are unable to discern the basis for the court's spousal support decision.

IV

[¶13] Kevin Willprecht argues the district court erred in awarding spousal support to Wendy Willprecht in excess of his ability to pay. He asserts the spousal support exceeds his income. Wendy Willprecht argues Kevin Willprecht possesses the ability to pay spousal support and the record lacks evidence to show otherwise. She asserts Kevin Willprecht paid $5,000 in monthly combined support obligations, without incident, from September 2018 through April 2019 under an interim agreement prior to their divorce being finalized.

[¶14] This Court previously reversed an award of spousal support when the support obligation was unrealistic. *See Weir v. Weir*, 374 N.W.2d 858, 866 (N.D. 1985). In *Weir*, the Court noted the husband received a gross salary of $79,392, and after deduction of taxes was left with a net income of $58,719.36. *Id.* at 865. After paying spousal support, child support, and other loan obligations and living expenses, the husband was left with a monthly deficit of $1,201.63, and without his expected yearly bonus, would be left in dire straits. *Id.* at 865-66. In its decision to reverse and remand, this Court stated:

> "No one has arithmetically demonstrated to us, and we have been unable on the record before us to discern on our own, that it

6

is possible for Patrick to make the increased spousal support payments in addition to making reasonable payments on his debts and paying for his own living expenses. Therefore, we are left with a definite and firm conviction that the trial court made a mistake in increasing the spousal support payments to $2,200 per month for 1985 and 1986 and in imposing spousal support payments of $1,800 per month for the years 1987 through 1989. We conclude, however, that the trial court's imposition of $1,500 per month spousal support payments commencing in 1990, and continuing thereafter for a period of 20 years or until Rebecca marries is not clearly erroneous."

*Id.* at 866.

[¶15] Our cases establish that a spouse is not required to deplete property distribution in order to live. *Hagel v. Hagel*, 2006 ND 181, ¶ 14, 721 N.W.2d 1 (citing *Sommers v. Sommers*, 2003 ND 77, ¶ 15, 660 N.W.2d 586; *Fox v. Fox*, 1999 ND 68, ¶ 24, 592 N.W.2d 541). Although those holdings have not been applied to the spouse making spousal support payments, a balanced application of the law requires that the principle apply to the obligor as well.

[¶16] The district court found Kevin Willprecht's five-year average income, adjusted for loss of some farmland transferred to Wendy Willprecht, was $153,556. Under its original order, the court found Kevin Willprecht's gross annual income was $144,078, and his net monthly income after taxes was $8,205. Although the court made no finding in its amended order as to Kevin Willprecht's net income, it found his gross annual income was $153,556. Kevin Willprecht asserts his after-tax income is $101,329 per year, resulting in a net monthly income of $8,444.08. Kevin Willprecht is currently paying $2,991 per month in child support, resulting in an annual obligation of $35,892. He also has an annual obligation to Wendy Willprecht of $62,285 per year for property equalization, which equates to $5,190.41 per month. Considering these two obligations alone, Kevin Willprecht's monthly divorce-related obligations are $8,181, leaving him with $263.08 per month for all other living expenses.

[¶17] When Kevin Willprecht's monthly spousal support payment of $1,735 is added to the other divorce-related obligations, Kevin Willprecht's obligations

exceed his earned income and leave him with a monthly deficit of $1,471.92 and an annual deficit of $17,663.04. We were provided with no explanation how Kevin Willprecht could meet these obligations without selling assets or otherwise incurring debt. To the contrary, the district court's amended order seemingly acknowledged the inability to pay, stating, "This award of rehabilitative spousal support is made with full recognition that Kevin may have to tap into his equity to make the payments."

[¶18] Although the district court concluded a new income disparity arose because of step-down provisions being added to the child support obligation, it failed to adequately assess Kevin Willprecht's ability to meet the new obligation for spousal support. *See Christianson v. Christianson*, 2003 ND 186, ¶ 20, 671 N.W.2d 801 ("Equalization is not a goal of spousal support, and equalization of income between divorcing spouses is not a measure of spousal support although it is a factor that can be considered.") (citation omitted). This Court is left with a definite and firm conviction a mistake has been made because neither Wendy Willprecht nor the district court provided a calculation of how Kevin Willprecht can meet his monthly obligations under the amended order without selling assets or incurring debt.

V

[¶19] We reverse and remand the district court's spousal support award for further proceedings consistent with this opinion.

[¶20] Jon J. Jensen, C.J.
  Gerald W. VandeWalle
  Daniel J. Crothers
  Jerod E. Tufte

**McEvers, Justice, concurring in part and dissenting in part.**

[¶21] I agree with the majority, that this matter should be returned to the district court for further consideration of Wendy Willprecht's needs versus Kevin Willprecht's ability to pay. I also agree with the majority that the court

8

did not have the option to change the property distribution based on the parameters of this Court's remand.

[¶22] This Court has repeatedly said property division and spousal support are intertwined and the district court may consider them together on remand. *Marschner v. Marschner*, 2001 ND 4, ¶ 23, 621 N.W.2d 339 (holding division of property not clearly erroneous on appeal, but because issues of property division and spousal support are intertwined, the district court may revisit the property division on remand); *Mertz v. Mertz*, 2015 ND 13, ¶ 27, 858 N.W.2d 292 (same); *Overland v. Overland*, 2008 ND 6, ¶ 21, 744 N.W.2d 67 (same); *Corbett v. Corbett¸* 2001 ND 113, ¶ 22, 628 N.W.2d 312 (same); *Striefel v. Striefel*, 2004 ND 210, ¶ 20, 689 N.W.2d 415 (affirming spousal support award, reversing marital property award, and remanding for further consideration on both issues). We did not explicitly include the often repeated legal maxim, but even if the property division cannot be revised, it does not mean it cannot be considered in the other side of the equation in determining the appropriateness of spousal support on remand.

[¶23] The reason to generally allow the district court to reconsider both spousal support and division of property on remand is simple: it is important that we not tie the court's hands when the two issues are intertwined. We have also frequently stated that questions of property division and spousal support cannot be considered separately or in a vacuum. *Marschner*, 2001 ND 4, ¶ 13. *See also Stock v. Stock*, 2016 ND 1, ¶ 13, 873 N.W.2d 38 (same); *Fox v. Fox*, 1999 ND 68, ¶ 22, 592 N.W.2d 541 (same); *Schmaltz v. Schmaltz*, 1998 ND 212, ¶ 17, 586 N.W.2d 852 (same). While we may have tied one hand, we have not tied the other, nor have we blinded the court to what has already been done.

[¶24] As the majority points out, we have stated a spouse is not required to deplete their property distribution in order to live. Majority, at ¶ 15 (citing *Hagel v. Hagel*, 2006 ND 181, ¶ 14, 721 N.W.2d 1 (citations omitted)). The majority states "a balanced application of the law requires the principle apply to the obligor as well." *Id.* (citing to no authority). This Court has not previously applied this premise to a spouse ordered to pay spousal support. I disagree with the majority expanding the general rule on depleting an award of marital

9

property to the spouse who may be required to pay spousal support payments. While applying the same principle to the obligor (the paying spouse) as to the obligee (the receiving spouse) sounds fair, in reality it may not be. I dissent to the extension as some type of bright line rule that if an obligor may need to dissipate any portion of their property award, they should not be required to pay spousal support. I agree that depletion or dissipation of property is a factor to consider when applying the Ruff-Fischer factors and the parties' needs versus ability to pay, but it should not be used as a rule to foreclose the possibility of a finding need *or* a finding ability to pay.

[¶25] In *Hagel*, cited by the majority, the district court found one party had a need for support, but denied spousal support because that party also received an equal distribution of property, much of which was cash that was available to her. 2006 ND 181, ¶ 14. This Court reversed and remanded when the division of property granted one party income producing property and the other party a predominantly cash award. *Id.* at ¶¶ 13-14. Here, Kevin Willprecht was awarded a much larger share of the property, much of it income producing, while Wendy Willprecht received a much smaller share, and little income producing property. She should not be penalized in consideration of spousal support because some of the property she was awarded was in cash payments.

[¶26] Instead of extending the concept of depletion of property to an obligor, we should consider the underlying rationale for applying it to the spouse in need of spousal support. The first case that this Court discussed depletion of property in regard to the award of spousal support was *Bakes v. Bakes*, 532 N.W.2d 666, 669 (N.D. 1995), where it was stated, "Dorothy, as a disadvantaged spouse, is not required to *deplete* her property distribution in order to live." (Emphasis added). In *Bakes*, this Court affirmed an award of rehabilitative spousal support, and said "[a] spouse's need for rehabilitative support in a long-term marriage is not limited to the prevention of destitution, but may be awarded to balance the burdens created by the parties' separation when it is impossible to maintain two households at the predivorce standard of living." *Id.* at 668 (citation omitted). In *Bakes*, this Court did not fashion a bright line rule, rather it was pointed out that "[o]f course, an award of spousal support must be made in the light of the needs of the disadvantaged spouse

and the supporting spouse's needs and ability to pay." *Id.* at 668-69 (citation omitted).

[¶27] In applying the depletion of property concept in *Bakes*, this Court relied on *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D. 1994), which stated: "[a] spouse's need for rehabilitation is not limited to the 'prevention of destitution,' but can also be based on their standard of living before the divorce."[1] (Relying on *Wahlberg v. Wahlberg*, 479 N.W.2d 143, 145 (N.D. 1992)). The Ruff-Fischer factors require consideration of:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances *as shown by the property owned at the time, its value at the time, its income-producing capacity, if any*, whether accumulated before or after the marriage, and such other matters as may be material.

*Wiege*, at 711 (emphasis added) (citations omitted). Other matters may include retirement savings or pensions, the liquidity or income-producing nature of the property distributed and whether a disadvantaged spouse will have to use up that property to live. *Id.* Spousal support may be awarded after consideration of the Ruff-Fischer factors to either maintain the parties' pre-divorce standard of living or to equitably share the burden caused by the divorce. *Id.* at 712-13. It appears this Court only intended to create the bright line rule that a spouse need not dissipate or deplete their property to be *eligible* to receive spousal support.

---

[1] It is noted that *Wiege v. Wiege*, 518 N.W.2d 708 (N.D. 1994) has been overruled to the extent that a separate or independent "disadvantaged spouse" finding is a prerequisite to awarding rehabilitative spousal support. *Sack v. Sack*, 2006 ND 57, ¶ 14, 711 N.W.2d 157. However, in overruling the requirement of making an independent finding of a "disadvantaged spouse" before making a spousal support award, we did not say that being disadvantaged is not something a district court cannot consider. Rather, in *Sack*, this Court stated, "[s]uch a requirement appears to be no more than a repetitive and onerous exercise for the parties and the courts, which are already faced with considerable procedural and substantive burdens. Nor is a separate test consistent with our case law which has clearly, though sporadically, emphasized the lack of 'rigid rules for determining whether or not to award [spousal support] and the amount of such award.'" *Id.* at ¶ 11 (citation omitted).

[¶28] This concept was continued in *Fox*, cited by the majority, where this Court reversed the district court when it did not award spousal support, apparently because the court found there was no need for spousal support because the spouse was adequately provided for by her property distribution. 1999 ND 68, ¶ 24. In *Fox*, the parties were married for 32 years, the wife had been a homemaker during the marriage and stayed home with the children, and the husband was a doctor. *Id.* at ¶ 23. Even after Dr. Fox became disabled, his disability income was $17,200 per month and Mrs. Fox would have faced difficulty finding any job other than some entry level position. *Id.* While this Court reversed the court on the division of property and the spousal support award for a number of reasons, it was also noted that we have adopted the "equitable doctrine" of rehabilitative spousal support and its purpose is not limited to assisting a disadvantaged spouse in achieving educational goals, but includes enabling a disadvantaged spouse to achieve suitable and appropriate self-support. *Id.* at ¶ 20. We also noted that questions of property division and spousal support cannot be considered separately or in a vacuum, especially when there is a large difference in earning power between the parties. *Id.* at ¶ 22. The court may also consider the standard of living of the parties in a long term marriage and the need to balance the burden created by the divorce when it is not possible to maintain two households at the pre-divorce standard of living. *Id.* at ¶ 20.

[¶29] Following remand, this Court affirmed a valuation and distribution of property resulting in the parties receiving nearly an equal amount, with each being awarded over $1.5 million, with Mrs. Fox receiving about $26,000 more than Dr. Fox. *Fox v. Fox*, 2001 ND 88, ¶ 10, 626 N.W.2d 660. Despite a large award of property, which slightly favored Mrs. Fox, we also affirmed an award of spousal support to her of $6,000 per month until Dr. Fox attained age 65. *Id.* at ¶ 13. We noted in adopting the equitable doctrine for spousal support, this Court has rejected the "minimalist doctrine," which aims to educate and retrain the recipient for minimal self-sufficiency. *Id.* at ¶ 24 (relying on *Marcia O'Kelly, Entitlements to Spousal Support After Divorce*, 61 N.D.L.Rev. 225, 242 (1985)).

[¶30] "We have reversed a decision of the trial court that required a spouse to use her property distribution payments to rehabilitate herself, while permitting the other spouse to retain income-earning property and use the income from that property to make the cash property distribution payments." *Marschner*, 2001 ND 4, ¶ 16 (citations omitted). The *Marschner* case, as here, involved the district court attempting to preserve a family farm. *Id.* at ¶ 17. Similarly, this Court in *Marschner* was concerned about requiring the spouse who would continue farming to be able to pay spousal support and a cash payment as part of the property distribution. *Id.* In *Marschner*, each party was awarded virtually an equal share of the marital property. *Id.* at ¶ 14. As noted in *Marschner*, if immediate spousal support cannot be awarded because of the ongoing property distribution payments, the matter should be reserved. *Id.* at ¶ 21. "Preserving the family farm is not to be done at all costs nor should it engulf all other factors." *Id.* at ¶ 18. This Court held the court's preservation of the farm, which required denial of spousal support, was clearly erroneous. *Id.* at ¶ 23.

[¶31] Unlike *Marschner*, where the district court awarded each party nearly an equal share of the marital property, Wendy Willprecht was only awarded about one-third of the marital estate, a net award of $2,076,302 compared to Kevin Willprecht's $3,562,998. *Willprecht v. Willprecht*, 2020 ND 77, ¶ 18, 941 N.W.2d 556. Also unlike *Marschner*, where the marital estate was small, here there is a large marital estate. *See Marschner*, 2001 ND 4, ¶ 17 (referring to the marital estate as small). Part of the reason Kevin Willprecht may have difficulty paying spousal support without dissipation of property is because he is making annual property "equalization" payments of $62,825 per year. *Willprecht*, 2020 ND 77, ¶ 20. The annual payments did little to equalize the burdens of the divorce, particularly when the payments may be made over fifteen years at three percent interest. If Wendy Willprecht was awarded the same amount of property, but had been awarded more farmland instead of an equalization payment, it may have had an effect on both her need and Kevin Willprecht's ability to pay. However, that is water under the bridge as the property award has been affirmed. *Id.* at ¶ 25.

13

[¶32] It is my position that the district court did not err by recognizing that Kevin Willprecht may need to tap into his equity to make payments if that is what is equitable based on these facts and circumstances under the Ruff-Fischer factors. On remand, if the court determines Wendy Willprecht is in need of support and Kevin Willprecht has an ability to pay given his current cash flow and property award, he may well need to utilize part of his net property award of $3,562,998 to do so if that is deemed equitable. Otherwise, it will be Wendy Willprecht who may be required to dissipate her property to meet her needs. Some depletion or dissipation of property should not be a trump card for either party in the determination of receiving or paying spousal support. We should consider depletion of property in the context that it began: to not require a spouse to deplete their property or be destitute before they may be considered eligible for receiving spousal support by applying the equitable doctrine for spousal support. It may be that both parties in a divorce will have to use some of their property award to support themselves or the other party if that is what is equitable in sharing the burdens of the divorce.

[¶33] For example, in *Knudson v. Knudson*, the wife was awarded over $1,233,000 in property, which included four quarters of land, a life estate in five quarters of land, with a five-year average of $86,516 in rental and mineral royalty income, and was not responsible for any of the marital debt. 2018 ND 199, ¶¶ 14-15, 916 N.W.2d 793. This was a case where the wife worked on the farm during the marriage. *Id.* at ¶ 14. However, her conduct was considered as a contributing factor to the divorce and while the husband's income averaged more than hers, his income was sporadic, and there were times when she earned more than he did. *Id.* The husband also was responsible for all the marital debt. *Id.* We affirmed the district court's denial of spousal support under these circumstances, and the court's rationale that the wife was able to support herself financially in the lifestyle to which she had become accustomed while she obtained her degree and license as a massage therapist, "without *substantially depleting her assets.*" *Id.* at ¶ 21 (emphasis added).

[¶34] There will never be another case exactly like this one, as "[e]ach spousal support determination is fact specific." *Lizakowski v. Lizakowski*, 2017 ND 91, ¶ 22, 893 N.W.2d 508 (quoting *Christian v. Christian*, 2007 ND 196, ¶ 13, 742

N.W.2d 819). We need to allow the district court to apply all the Ruff-Fischer factors, which includes their financial circumstances *as shown by the property owned at the time, its value at the time, its income producing capacity, if any*, to determine what is equitable. There is nothing in the Ruff-Fischer factors that excludes the property award to either party from consideration in a spousal support determination. We should not reduce the application of the Ruff-Fischer factors to a game of King's X.

[¶35] Lisa Fair McEvers